## TRUITT v. PATTEN, Sheriff.

No. 4790. Decided April 8, 1930. (287 P. 175.)

568

*Joseph E. Richards,* of Salt Lake City, for appellant.

*Evans & Sullivan,* of Salt Lake City, for respondent.

FOLLAND, J.

This is an action in conversion to recover the value of an automobile which the defendant sheriff attached and sold as the property of K. L. Carlson. Respondent sold the automobile to Carlson in March, 1927, upon condition that he would pay for the car in monthly installments, and that the car should be the property of respondent until fully paid for. The automobile was registered in the office of the secretary of state in the name of respondent. At the time of the attachment, March 24, 1928, Carlson was in arrears with his payments. Respondent had exercised forbearance, but had not extended time for payment to any definite or fixed date, and had not taken the car into his possession as he had a right to do under the contract. Carlson was an employee of respondent, and on the date of the attachment had driven the car to his place of employment and had parked it on the lot of respondent. Immediately upon learning of the attachment respondent called at the office of the sheriff and claimed the car as his own. The sheriff asked him the amount remaining unpaid and was informed the amount was between $27 and $28. No tender

of this or any other sum was made, but instead respondent was told to file his claim with the sheriff, and that he (the sheriff) would request that it be paid. Later conversation was had by respondent with the attaching creditor and with the attorney for the attaching creditor, but at no time was any lawful tender made respondent of the full amount due him. The sheriff sold the automobile to satisfy judgment in the action of *Rasmussen* v. *Carlson*. Thereafter this action was commenced to recover the value of the car. The sum of $27 was tendered into court in this action to satisfy the claim of respondent, but such sum was refused. The case was tried to a jury. At the close of the evidence appellant and respondent each requested the court to direct a verdict in his favor. The court directed a verdict in favor of respondent for the market value of the car at the time it was taken on attachment.

It was and is the contention of respondent that the sheriff was a wrongdoer in taking manual possession of the car under the writ of attachment; that Carlson's interest or equity in the car should have been reached, under our statute, by serving respondent with the writ as in the nature of garnishment. This theory was adopted by the trial court. Appellant insists that he followed the statute in levying the attachment since the property was capable of manual delivery, and was, in contemplation of law, in possession of Carlson. He further alleges that respondent was, on April 3, 1928, tendered $27, the amount alleged to be his interest in the car.

We cannot approve the theory of respondent that Carlson's interest could be reached by serving respondent with the writ as in garnishment. The car was in possession of Carlson under his contract to purchase. The fact that the auto was parked on vendor's lot is immaterial. Notwithstanding this, respondent must prevail. It is well settled in this state that a conditional contract is valid between the parties, and, in the absence of fraud, as to third parties, and, when so provided therein,

gives to the vendor the right to immediate possession of the property on default of any of its conditions. *Russell* v. *Harkness*, 4 Utah 197, 7 P. 865; *Lima Machine Works* v. *Parsons*, 10 Utah 105, 37 P. 244; *Lippincott* v. *Rich*, 19 Utah 140, 56 P. 806; Id., 22 Utah, 196, 61 P. 526; *Freed Furniture & Carpet Co.* v. *Sorensen*, 28 Utah 419, 79 P. 564, 107 Am. St. Rep. 731, 3 Ann. Cas. 634. Creditors of the vendee can obtain no interest in the property by attachment adverse to the rights of the vendor. *Passow* v. *Emery*, 37 Utah 49, 106 P. 935. In the last-cited case the question under what circumstances an attaching creditor may satisfy the vendor and thereby subject the vendee's interest to attachment was reserved and not decided.

At the time plaintiff demanded possession of the property from the sheriff he was entitled to its possession, not only because of delinquency in payment, but because of the attachment, one of the conditions of the contract of sale being that the vendee should not permit the car to be removed from his possession nor to be attached. *King* v. *Cline*, 49 Cal. App. 696, 194 P. 290; *McArthur* v. *Beals*, 243 Mass. 449, 137 N. E. 697; *Starr* v. *Govatos* (Del. Super.) 130 A. 392. The vendor, upon demand, was entitled to the possession of the automobile after condition of the contract of sale was broken. *Lippincott* v. *Rich*, supra; *Passow* v. *Emery*, supra.

Title to the auto was in respondent at the time it was taken on attachment by the sheriff. Appellant was charged with notice of this fact because the car was registered in respondent's name as owner in the office of the secretary of state. The amount due had neither been paid nor tendered.

The majority rule seems to be that the buyer under a conditional sale contract has no such interest in the property before the purchase price is paid as is subject to levy and sale at the instance of his creditors. Especially is this true where the buyer is in arrears with his payments. Estrich, Installment Sales, § 480, p. 902;

61 A. L. R. 782, note: *Franklin Motor Co.* v. *Hamilton,* 113 Me. 63, 92 A. 1001; *Buckmaster* v. *Smith,* 22 Vt. 203. However, in some jurisdictions it is regarded that the interest of the buyer should be subject to his debts. The levying creditor has the right to pay the balance due on the contract to the vendor, thus terminating the seller's rights and rendering the property subject to attachment or execution. 61 A. L. R. 792. We think this the better rule. It applies when attachment is levied before the buyer is in default, and in some instances where the buyer is delinquent, when payment is promptly tendered to the vendor. *Nevada Motor Co.* v. *Bream* (Nev.) 269 P. 602, 61 A. L. R. 776; 1 Williston, Sales (2d Ed.) § 326; *Newhall* v. *Kingsbury,* 131 Mass. 445; *Frank* v. *Batten,* 49 Hun, 91, 1 N. Y. S. 705; *Hervey* v. *Dimond,* 67 N. H. 342, 39 A. 331, 68 Am. St. Rep. 673; *King* v. *Cline,* supra.

The evidence fails to show seasonable or adequate compliance with these requirements. The vendor has not been paid either the balance due on the contract or the money expended by him in placing a battery in the car and replacing the top. While both the sheriff and the attaching creditor told the vendor that payment would be made, no lawful tender was ever made of the whole amount due. The vendor at no time said he would not accept the amount due if tendered. It could not necessarily be implied from his conduct that he would refuse had tender been promptly made. He, however, insisted at all times that he was the owner of the car and entitled to its possession. The sum of $27 was tendered into court in the present case, but it is clear from the evidence that this sum was not all that was owing including the battery and top. Nor was the tender timely made. The wrongful seizure and sale of the property by the sheriff amounted to a conversion thereof. *Larsen* v. *Ryan,* 54 Utah 250, 180 P. 178; 26 R. C. L. 1130.

Appellant contends that, if respondent is entitled to judgment as for conversion, then the judgment should have been

for the amount due the vendor under the contract only. It is the general rule, in conversion, that the measure of damages is the market value of the property at the time and place of conversion with interest from that date, *Larsen* v. *Ryan*, supra; *Madsen* v. *Madsen* (Utah) 269 P. 132; *Whittler* v. *Sharp*, 43 Utah 419, 135 P. 112, 49 L. R. A. (N. S.) 931; *King* v. *Cline*, supra; *Brown* v. *Haynes*, 52 Me. 578; *Western Bond & Mortgage Co.* v. *Chester*, 145 Wash. 81, 259 P. 13; *Twentieth Century M. Co.* v. *Excelsior Springs M. Co.*, 273 Mo. 142, 200 S. W. 1079; 38 Cyc. 2092, and without deduction for partial payments, *Brown* v. *Haynes*, supra; *Duncan* v. *Stone*, 45 Vt. 118. There are cases where the interest falls short of full ownership, where recovery has been restricted to actual damages suffered. This seems to be permitted only in cases where the question of liability comes up as between a general and a special owner and is not recognized in actions against a stranger. 1 Street, Foundation of Legal Liability, 255. As to a stranger who has neither title nor right of possession, plaintiff may recover full market value. 38 Cyc. 2089. In the case of *Meister & Sons Co.* v. *Harrison*, 56 Cal. App. 679, 206 P. 106, it was held that a seller who reserved title with right to retain installments paid in event of buyer's default, in an action for possession of the property or its value against third parties who, with notice of seller's rights, took possession after buyer's default, could recover the full value of the goods without deduction of the amount the buyer had paid. This was said to be pursuant to section 667 of the Code of Civil Procedure. That section is identical with Comp. Laws Utah 1917, § 6864. Here respondent chose, as he had a right to do, to bring his action for the value rather than to seek recovery of the property from the person to whom it had been sold and delivered.

JUDGMENT AFFIRMED, with costs to respondent.

CHERRY, C. J., and EPHRAIM HANSON, J., concur.

ELIAS HANSEN, J. (dissenting).

I dissent. The complaint upon which this action is founded reads as follows:

"Plaintiff complains and alleges:

"(1) That on and prior to the 24th day of March, 1928, plaintiff was the owner and in possession, at Salt Lake City, Utah, of that certain Chandler touring automobile, registered in plaintiff's name in the office of the Secretary of the State of Utah, as No. 61289, Motor No. 86071, Serial No. 91752, of the value of $125.00.

"(2) That on or about said date, at Salt Lake City, Utah, defendant wrongfully and unlawfully took said automobile from plaintiff's possession, as aforesaid, and wrongfully and unlawfully converted the same to his own use, to plaintiff's damage in the sum of $125.00.

"Wherefore, plaintiff demands judgment against defendant for the sum of $125.00, together with interest thereon from the date hereof and together with costs of this suit."

The defendant answered. The answer reads as follows:

"Comes now the defendant and for answer to the plaintiff's complaint in the above entitled action, admits, denies, and alleges:

"Admits that said automobile is registered in the name of the plaintiff in the office of the secretary of state, and alleges that the said automobile was taken under a writ of attachment brought by P. C. Rasmussen and Sons, Inc., a corporation, against K. L. Carlson, that K. L. Carlson is buying the said automobile from the plaintiff and has it paid for except the amount of $27.00, and that on or about the 3rd day of April, 1928, the plaintiff herein was tendered the said sum of $27.00, his interest therein, and that the said corporation is and ever since has been ready, willing and able to pay the sum of $27.00 and tenders the sum herewith into court for the use and disposition of the said plaintiff herein, and that otherwise than the interest aforesaid, K. L. Carlson is the owner of the said automobile, and denies every other allegation therein contained.

"Wherefore defendant prays that the complaint of the plaintiff be dismissed, that the plaintiff take nothing and that the defendant have and recover his costs herein."

There is no dispute as to the facts. They are as follows: On March 8, 1927, the plaintiff and one K. L. Carlson en-

tered into a written agreement whereby Carlson agreed to buy and plaintiff agreed to sell the automobile in controversy. The agreed price of the automobile was $100. The sum of $25 was paid on the contract price at the time the agreement was entered into; the remaining $75 was to be paid in installments of $6 per month for eleven months, and the last installment of $9 was to be paid twelve months after the date of the contract; deferred payments were to bear interest at the rate of 8 per cent per annum until due and 1 per cent per month after the due date.

The contract contains, among others, these provisions:

"2. Said Purchaser agrees not to sell, attempt to sell or otherwise dispose of same nor take the same out of the State of Utah, nor permit the same to be removed from his possession, nor permit the same to be attached. * * *

"4. Should said automobile suffer any loss, damage or injury from any cause whatsoever, such loss, damage or injury shall not relieve said Purchaser from the obligation to purchase and pay for the same, according to the terms of this agreement. * * *

"7. It is distinctly understood and agreed that title to said automobile shall remain in said Seller until all of the payments herein provided for are made and all of the conditions and terms hereof fully complied with by said Purchaser, whereupon said Seller shall make, execute and deliver over unto said Purchaser a bill of sale of said automobile. * * *

"9. It is distinctly understood and agreed that should Purchaser fail to make any of the said payments to said Seller in the amounts, manner and within the time herein provided for, or should said Purchaser fail to perform any of the terms or conditions hereof in the manner and within the time herein provided for, said Seller may declare the entire purchase price due and payable without notice, and may take immediate possession of said automobile, attachments, accessories and equipment, and in either or both events all of the rights, titles and equities of said Purchaser in and to said automobile shall immediately cease and determine, and said Seller shall be released from all obligation to transfer or deliver said automobile to said Purchaser, and all sums of money theretofore paid by said Purchaser to said Seller hereunder shall remain the sole property of said Seller and shall be considered as compensation for the use of said

automobile by said Purchaser. In the event the Seller shall resell said property after repossession, and the net amount received therefor, after paying all expenses and attorney's fees connected therewith, is insufficient to pay in full the unpaid portion of the purchase price, the Purchaser agrees to pay such deficiency, including all costs and attorney's fees that may be incurred in collecting the same. In lieu of reselling such property after repossessing same, the Seller may fix the value thereof without selling same and in event the amount so fixed after providing for all expenses and attorney's fees, is insufficient to pay in full the unpaid portion of the purchase price, the Purchaser likewise agrees to pay such deficiency, including all costs and attorney's fees that may be inquired in collecting same.

"10. In the event said Seller employs an attorney, collector, or any other person, to recover possession of said automobile or to recover any indebtedness due hereunder or to enforce any of the terms of this agreement, the said Purchaser hereby agrees to pay a fee equal to 10% of the amount still unpaid on said contract, in no event such fee to be less than $50.00, such fee to be added to the purchase price and to be due and payable hereunder forthwith. In the event suit is filed the Purchaser agrees to pay a reasonable attorney's fee to be fixed by the court."

On April 6, 1928, the defendant, as sheriff of Salt Lake county, Utah, attached the automobile pursuant to an execution issued out of the city court of Salt Lake City in an action wherein P. C. Rasmussen & Sons, Inc., a corporation, was plaintiff and K. L. Carlson was defendant. The defendant took the automobile into his possession. He advertised the automobile for sale, and in due time it was sold to satisfy the judgment which P. C. Rasmussen & Sons, Inc., had against K. L. Carlson. At the time the automobile was levied upon the plaintiff had not been fully paid therefor. The plaintiff testified that there was $20 and some interest unpaid on the contract price of the automobile; that shortly after the automobile was sold to Carlson he placed a battery in the automobile; that the price of the battery was $7, and plaintiff had not been paid for it; that some months later plaintiff put a top on the automobile; that the material for the top cost $12, and it was worth $3 for the labor in putting the top on; that Carlson had not paid for the top; that

plaintiff sold Carlson two inner tubes which were put in the car; and that Carlson had not paid for them. The automobile was registered in the name of the plaintiff in the office of the secretary of the state of Utah. It will be observed that by the terms of the written contract whereby plaintiff agreed to sell, and Carlson agreed to buy, the automobile, all of the money which Carlson agreed to pay for the automobile was past due when the sheriff levied the attachment. It appears, however, from plaintiff's testimony, that some time after January 27, 1928, Carlson asked the plaintiff to take the automobile and pay what he could for Carlson's interest therein; that plaintiff said he did not want to take the automobile, but "would rather loan you (Carlson) a little money and see if you cannot get ahead and go ahead with it and keep it and use it—I told him to take it home and put it in the garage." After that time Carlson used the automobile. Further on in his testimony the plaintiff testified that he would not try to take the automobile from Carlson, and that Carlson still had a right in the automobile "when he paid it out." Plaintiff further testified that after the automobile was attached he went to the office of the sheriff and informed Mr. Schettler, one of the deputy sheriffs, that the automobile belonged to him; that there was somewhere around $27 or $28 still unpaid on the automobile; that Schettler told plaintiff that, if he would present his claim to the sheriff, it would be paid. Plaintiff also testified that he had a conversation with Mr. Knowlton, the attorney for P. C. Rasmussen & Sons, Inc., in Mr. Sullivan's office, and that Knowlton stated he would pay him $27 for his interest in the automobile, but that Knowlton did not tender any money to the plaintiff. When Knowlton told plaintiff that he would pay the $27 plaintiff replied that it was his car, and that he did not recognize that the car belonged to any one but himself. Plaintiff made no claim at the trial that he ever dispossessed Carlson of the automobile, and that he did not suppose he had to take possession of the automobile because he thought that

when he "kept the registration that it was mine. I did not think that I had to repossess it." Plaintiff's testimony thus conclusively shows: (1) That plaintiff agreed to forbear and did forbear from insisting that the remainder of the purchase price of the automobile be paid at the time and times mentioned in the written contract; (2) that there was less than $27 owing to plaintiff by Carlson for the sale and purchase of the automobile at the time it was attached by the defendant; (3) that plaintiff waived an actual tender of the money which was owing to him by Carlson on the automobile.

Under these circumstances I am unable to agree with the views expressed in the prevailing opinion that the defendant or P. C. Rasmussen & Sons, Inc., should be penalized because an actual tender of the money owing to the plaintiff was not seasonably made. The plaintiff does not complain because the sheriff did not tender the amount of money that was still owing on the purchase price of the automobile. The only wrong complained of by the plaintiff is the fact that the sheriff attached an automobile, the title to which was in the plaintiff. If the plaintiff is entitled to succeed, it must be upon the wrong complained of, and not because of a wrong concerning which no complaint is made. There is no pleading and there is no evidence that the plaintiff ever declared the entire purchase price of the automobile due and payable before he brought his action. "Where the time fixed by the contract for performance is permitted to pass, both parties concurring, the time of performance thereafter becomes indefinite, and one party cannot rescind until full notice and a reasonable time for performance is given." 13 C. J. 690, and cases cited in the footnote.

Soon after the automobile was attached the plaintiff and Mr. Knowlton, the attorney for P. C. Rasmussen & Sons, Inc., met in the office of Mr. Sullivan, counsel for the plaintiff. At that meeting Mr. Knowlton stated that P. C. Rasmussen & Sons, Inc., would pay the $27 which was still

owing plaintiff on the automobile. The reply of the plaintiff that he owned the automobile was in effect a refusal to accept the money. The amount that Knowlton offered plaintiff was apparently more than was owing to plaintiff on the contract. The fact that plaintiff had sold Carlson a battery, a top, and some inner tubes cannot be said to add to the claim that plaintiff held against the automobile. It is elementary that one does not acquire a lien upon an automobile merely because he sells accessories which are placed on an automobile when the owner of the automobile retains possession thereof. There is nothing in the contract between Carlson and plaintiff that gave plaintiff a lien on the automobile for the battery, the top, or the inner tubes, and therefore plaintiff had no lien on the automobile for these accessories. Where it is made to appear that a tender of money would not have been accepted, if made, a formal tender is waived. *Cummings* v. *Nielson,* 42 Utah 157, 129 P. 619; *Obrecht* v. *Nielson Land & Water Co.,* 44 Utah 270, 140 P. 117; *Pool* v. *Motter,* 55 Utah 288, 185 P. 714; *Thomas* v. *Johnson,* 55 Utah 424, 186 P. 437; *Evans* v. *Houtz,* 57 Utah 216, 193 P. 858.

There is a more fundamental reason why, in my opinion, the judgment in this case must be reversed. It is held in the prevailing opinion that Carlson's interest in the automobile was an interest in property which could be attached. I am in accord with such view. It is a general rule of law that the amount which one may recover is limited by the damages actually sustained. While there are some exceptions to the general rule I can see no good reason why this case is not controlled by the general rule and not by any exception thereto. Admittedly the plaintiff has been paid the entire purchase price of the automobile excepting the sum of $20 principal and a small amount of interest. Plaintiff does not claim that he has declared a forfeiture of Carlson's interest in the automobile. Under such circumstances I can see no escape from the conclusion that the measure of plaintiff's damage is the amount of money which was owing

on the automobile at the time the attachment was levied. In modern times, on grounds of public policy, courts have uniformly refused to enforce those terms of a contract between private individuals which provide for the payment of a penalty in case of breach. 4 Page on Contracts, § 2118, p. 3673; 17 C. J. § 238, p. 932; *Dopp* v. *Richards,* 43 Utah 332, 135 P. 98; *Western Macaroni Mfg. Co.* v. *Fiore,* 47 Utah 108, 151 P. 984. A different rule applies where the parties to a contract intend to and do agree upon what shall be liquidated damages in case of a breach of a contract. However, the use of the term "penalty" or "liquidated damages" by the parties to a contract is not controlling in construing a contract. 4 Page on Contracts, § 2120, p. 3677, and cases cited in the footnote to the text. Whether a provision in a contract is to be construed as an agreement for liquidated damages or for a penalty must be determined by a consideration of the circumstances surrounding the parties at the time of its execution. 17 C. J. § 233, pp. 934-5. When a contract contains a provision for a forfeiture, if money is not paid when due, such provision is quite generally held to be a penalty and not an agreement for liquidated damages. In 17 C. J. § 252, p. 954, the law is thus stated:

"Although there is some authority to the contrary, the ordinary rules as to liquidated damages may be said to be inapplicable to contracts for the payment of money only. In such cases the courts construe the damages as a penalty, irrespective of the intent of the parties or the language by which it is expressed. The principle is that damages for the breach of contracts for the payment of money are fixed and liquidated by law, and neither require nor are susceptible of liquidation by the parties, interest being the legal measure of damages in all such cases."

To require the payment of $125 to the plaintiff in satisfaction of his claim for $20, and a small sum of interest is clearly a penalty as to the excess. There is no express language in the written contract between plaintiff and Carlson which requires Carlson or his successors in interest to pay

the market value of the automobile if there should be a default in the payment of one or more installments. If there were such a provision I am of the opinion that it would be void because against public policy. The same reasons that impel courts to refuse to give effect to provisions in a contract for the payment of a penalty because of a breach apply to a case where a penalty is imposed because a tender of money is not timely made. It cannot be said that the plaintiff was damaged in the sum of approximately $100 because the sheriff failed to tender the money owing on the automobile which had been attached. If the limit of plaintiff's right in the automobile at the time it was attached was the amount remaining unpaid, I am unable to conceive of any reasonable basis for increasing the amount sixfold merely because the money was not tendered, especially where a tender would have been useless.

Under the facts shown by the record in this case the plaintiff was a special owner of the automobile involved in this action. Plaintiff's ownership was limited by Carlson's right to become the absolute owner by paying the remainder of the purchase price. No claim is made that Carlson's right was ever cut off. The measure of damages that may be recovered by a special owner of property from one who has an interest in the property or one in privity with him, for the conversion thereof is the amount of interest of such special owner in the property at the time of the conversion, not exceeding the value of the property converted. *Ryan* v. *Young*, 147 Ala. 660, 41 So. 954; *Karter* v. *Fields*, 130 Ala. 430, 30 So. 504; *McGowen* v. *Young*, 2 Stew. (Ala.) 276; *Cramer* v. *Marsh*, 5 Colo. App. 302, 38 P. 612; *Horne* v. *Guiser Mfg. Co.*, 74 Ga. 790; *Guilford* v. *McKinley*, 61 Ga. 230; *Clark* v. *Bell*, 61 Ga. 147; *Russell* v. *Kearney*, 27 Ga. 96; *Linville* v. *Black*, 5 Dana (Ky.) 176; *Bradley Land & Lumber Co. et al.* v. *Eastern Mfg. Co.*, 104 Me. 203, 71 A. 710; *Tower* v. *Haslam*, 84 Me. 86, 24 A. 587; *Penniman* v. *Winner*, 54 Md. 127; *White* v. *Allen*, 133 Mass. 423; *Chamberlin* v. *Shaw*, 18 Pick. (Mass.) 278, 29 Am. Dec.

586; *Lusch* v. *Huber Mfg. Co.*, 79 Neb. 45, 112 N. W. 284; *Harvey* v. *Morse*, 69 N. H. 475, 45 A. 239; *Van Schaick* v. *Ramsey*, 90 Hun, 550, 35 N. Y. S. 1006; *Woods* v. *Nichols*, 22 R. I. 225, 47 A. 211; *Woods* v. *Nichols*, 21 R. I. 537, 45 A. 548, 48 L. R. A. 773; *Benjamin Schwarz & Sons* v. *Kennedy* (C. C.) 142 F. 1027; *Moore et al.* v. *Carey Bros. Oil Co. et al.* (Tex. Com. App.) 269 S. W. 75, 39 A. L. R. 1247; *Alder* v. *Chapman*, 91 Okl. 196, 219 P. 90.

Under the judgment rendered in this case plaintiff will receive the same amount of damages that he would have received if he had been the absolute owner of the automobile. Clearly plaintiff was not damaged as much because he was deprived of his special property right in the automobile as he would have been if he had been the absolute owner thereof. Carlson, according to plaintiff's testimony, always had a right to the automobile when he paid the remainder of the purchase price. If Carlson always had such a right I can see no escape from the conclusion that he also has a right to the proceeds derived from the sale of the automobile after plaintiff is paid the amount owing to him. If Carlson had such a right, it passed to the defendant by virtue of the attachment and sale, and plaintiff has no just ground to complain so long as he received the amount owing to him. An attaching creditor of the interest of a buyer to purchase property under a conditional sales contract cannot well be said to be a stranger to the title because such attaching creditor acquires, by the attachment sale, the title theretofore held by the debtor. If plaintiff had, before commencing his action, demanded payment of the money owing him and declared a forfeiture of Carlson's interest in the automobile because of nonpayment of such money, an entirely different situation would have been presented. The cases of *Meister & Sons Co.* v. *Harrison*, 56 Cal. App. 679, 206 P. 106; *Duncan* v. *Stone*, 45 Vt. 118, cited in the prevailing opinion, are readily distinguishable from the facts in this case. In both cases the buyer was in default. Here, as already indicated, plaintiff extended the time of

payment of the balance of the purchase price, and therefore he cannot rescind "until full notice and a reasonable time for performance is given." Plaintiff does not claim that any demand was made for the payment of the balance of the purchase price, or that Carlson's interest in the automobile was ever forfeited.

I am thus of the opinion that the judgment should be reversed and a new trial granted.

STRAUP, J., concurs in the dissenting opinion.